**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                    No. 94-5540

DAVID FITZGERALD LIGHTNER,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                                                      No. 94-5541
BRODERICK EDWARD GRAVES, a/k/a
Broad,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CR-93-133-P)

Submitted: April 28, 1995

Decided: June 5, 1996

Before WIDENER, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Norman Butler, LAW OFFICES OF HAROLD BENDER, Charlotte, North Carolina; Randolph Marshall Lee, Charlotte, North Carolina, for Appellants. Mark T. Calloway, United States Attorney, Gretchen C.F. Shappert, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants, David Lightner and Broderick Graves, appeal from their convictions on charges relating to cocaine trafficking. Lightner and Graves were convicted of one count of conspiracy to possess with intent to distribute cocaine base, 21 U.S.C. § 846 (1988). Lightner was also convicted of one count of possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1) (1988). Finding no error, we affirm.

I

This prosecution resulted from an investigation conducted by a narcotics interdiction task force operating out of the Charlotte Douglas International Airport. Agents stopped, questioned, and eventually searched Kristopher Gordon after he deplaned a flight from Newark, New Jersey. Gordon possessed approximately one kilogram of cocaine base. Gordon agreed to cooperate with the agents, and he stated that he was supposed to deliver the cocaine base to Broderick Graves. At the agents' behest, Gordon paged Graves from the airport. Graves responded to the call and told Gordon that he would send "his girl" to pick up Gordon. Graves then called back and stated that he was going to send "his boy" instead. The agents escorted Gordon back

2

into the terminal and followed him while they waited for someone to approach. Eventually Lightner approached Gordon and motioned for Gordon to follow him. As Gordon and Lightner approached an escalator, Lightner noticed the agents and stated, "man, this is the police." Lightner was subsequently arrested.

Further investigation revealed that Gordon had met Graves on a previous trip to Charlotte. Gordon had driven to Charlotte with his friend Kenny Bachelor, who sold drugs in New Jersey. While in Charlotte, Bachelor had a conversation with a friend, Kim Flemmings, about his drug dealing in New Jersey. Flemmings mentioned to Bachelor that she knew some connections in Charlotte and that she could introduce Bachelor to Graves, who also dealt drugs.

Gordon and Bachelor were subsequently introduced to Graves, and over the next ninety days Gordon and Bachelor made numerous trips to Charlotte and began delivering large amounts of cocaine and cocaine base to Graves. Bachelor's girlfriend also delivered cocaine base to Graves on one occasion. Bachelor and Gordon both testified that Graves supplied cocaine to Lightner. Phone records demonstrated numerous telephone calls between Gordon and Bachelor in Newark and residences associated with Graves and Lightner in Charlotte.

Graves and Lightner contend on appeal that the district court erred in denying Lightner's motion for a mistrial, in denying Lightner's motion to suppress a statement made by Lightner upon arrest, and in enhancing Graves's sentence four levels because of his role in the conspiracy. Graves filed a pro se supplemental brief raising several contentions not addressed by counsel.

II

Lightner contends that the district court erred in failing to grant his motion for a mistrial. Lightner's counsel bases this argument on his belief that two of the Government's witnesses violated a sequestration order by discussing their testimony during the trial. We reject this argument because the record clearly demonstrates that no violation of the sequestration order occurred.[1] Therefore, the district court did not

_____

[1] On cross examination, Agent Taylor appeared to testify that she had discussed what she remembered about the arrest with Agent Beam that

3

abuse its discretion in denying the motion. See United States v. Alonzo, 689 F.2d 1202, 1204 (4th Cir. 1982).

III

Lightner next claims that the district court erred in denying his motion to suppress a statement made by Lightner to Officer Witherspoon shortly after the arrest. Officer Witherspoon testified that after he arrested Lightner he escorted Lightner back into the airport office and Lightner stated that he had just gotten out of prison and that he

_____

morning after Agent Beam had testified. On redirect and recross, however, it became clear that Agent Taylor misunderstood the question put to her and had only discussed the arrest with Agent Beam prior to coming to trial:

> Q: Now, I believe that Mr. Butler questioned you about your conversations with Karen Beam today. Did you have any conversations with Karen Beam after she testified today?
>
> A: No, I did not.
>
> Q: And with regard to getting your stories straight, have you ever had a conversation with Agent Beam in an effort to get your stories straight?
>
> A: No, I haven't.

Agent Taylor testified further on recross:

> Q: And did you misunderstand me when I asked you if you talked to Officer Beam after she testified today and you said, "yes"?
>
> A: I have not spoken with her after she testified today.
>
> Q: You didn't do that?
>
> A: I did not.
>
> Q: So you didn't understand my question when I asked you that a few minutes ago?
>
> A: I thought you asked me prior to us coming in here today?
>
> Q: No, ma'am. After she testified?
>
> A: Oh, I misunderstood you.

4

could not do any more time. Lightner's counsel sought to suppress this statement on the ground that it was the product of a custodial interrogation and Lightner was never advised of his Miranda rights.

We reject this argument because the district court's factual findings that Lightner was advised of his Miranda rights and that his statement was voluntarily made are not clearly erroneous. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (1992). Officer Witherspoon testified that he read Lightner his Miranda rights, that Lightner did not wish to waive his rights, that Witherspoon ceased to question Lightner, and that Lightner's statement that he could not go back to prison was not made in response to any questioning.

Lightner also argues for the first time on appeal that even if he were read his Miranda rights, the statement should have been suppressed because it was the product of police coercion that rendered his statement involuntary. Lightner has waived appellate review of this claim but for plain error by his failure to specifically raise it before the district court. See United States v. Olano, ___ U.S. ___, 61 U.S.L.W. 4421 (U.S. Apr. 26, 1993) (No. 91-1306). Lightner presented no evidence to support his allegations of coercion, and based on the record below, the district court did not commit plain error in finding that Lightner's statement was voluntarily made.

IV

Graves claims that the district court erred in enhancing his sentence for his role in the offense. The Sentencing Guidelines provide for a four-level enhancement where a defendant was a leader or organizer of criminal activity that involved five or more participants or was otherwise extensive. United States Sentencing Commission, Guidelines Manual, § 3B1.1(a) (Nov. 1993). To qualify for this enhancement, the defendant must have been a leader or organizer of at least one of the participants to the criminal activity. USSG § 3B1.1, comment. (n.2). The district court's determination that the defendant played an aggravating role, that the crime involved five or more people, or that the crime was otherwise extensive is a factual determination that we review for clear error. United States v. Smith , 914 F.2d 565, 569 (4th Cir. 1990), cert. denied, 498 U.S. 1101 (1991). The Government was

5

required to prove these elements by a preponderance of the evidence. See McMillan v. Pennsylvania, 477 U.S. 79, 91 (1986).

We reject Graves's arguments because the evidence adduced at trial supported the court's findings. The evidence showed the existence of a conspiracy between Bachelor and Gordon in New Jersey and Graves in Charlotte that was capable of procuring and selling between 1.5 and 5 kilograms of cocaine in a ninety-day period. Graves was clearly shown to be the leader of the Charlotte segment of the conspiracy. Lightner purchased cocaine from Graves, and Graves was the contact person responsible for picking up Gordon at the airport.

Additionally, when Gordon paged Graves from the airport, Graves called back and stated that he was sending "his girl" out to pick up Gordon. Graves then called back and stated that he was sending "his boy" to pick up Gordon instead. Ultimately Lightner arrived to pick up Gordon. This testimony demonstrated that Graves exercised some degree of organizational and supervisory control over at least Lightner and an unknown female. To the extent Graves alleges that Kim Flemmings was the leader of the conspiracy, we note that whether Flemmings was also a leader is irrelevant. See USSG § 3B1.1, comment.(n.4). The district court's finding that Graves was a leader or organizer of the conspiracy was not clearly erroneous.

Graves also contends that the Government failed to show that the conspiracy was "otherwise extensive." We disagree. Based on the large amount of drugs distributed across the country over such a short period of time, such a finding could not be clearly erroneous. We note, however, that this issue need not be decided. The Government introduced evidence that the conspiracy involved at least Gordon, Bachelor, Lightner, Graves, Bachelor's girlfriend, and Kim Flemmings. Accordingly, the conspiracy involved five or more people, which satisfied the requirements of USSG § 3B1.1(a), independent of a showing that it was "otherwise extensive."

Finally, Graves filed a supplemental informal brief raising several issues not addressed by counsel.[2] Although given the opportunity to

_____

**2** In addition, Graves contends that the district court erred in enhancing his sentence for being a leader or organizer in the offense. However, that claim was addressed in counsel's brief. As noted above, we find that claim meritless.

6

do so, the Government failed to respond to Graves's supplemental claims. Nevertheless, we find that Graves's contentions lacks merit.

First, Graves contends that he was denied his right to a special verdict on the criminal forfeiture count contained in the indictment. However, because the forfeiture count was dismissed on the Government's motion, this claims lacks merit.

Next, we reject Graves's argument that the evidence of his participation in the distribution of cocaine powder was at material variance with the indictment charging conspiracy to distribute cocaine base. See United States v. Pierce, 893 F.2d 669, 676 (5th Cir. 1990), cert. denied, 506 U.S. 1007 (1992). In any event, Graves was not prejudiced because the evidence was strong of his participation in a conspiracy to distribute cocaine base. See United States v. Camps, 32 F.3d 102, 105 (4th Cir. 1994), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3626 (U.S. Feb. 21, 1995) (No. 94-6853).

Additionally, we reject Graves's argument that he should not have received an enhancement for obstruction of justice for perjuring himself at trial. The Government proved Graves's perjury by a preponderance of the evidence. Further, the district court went through the portions of the transcript reflecting Graves's perjury, reading the questions and Graves's false answers into the record at sentencing. The questions and answers clearly involved material matters, and they were false. Further, the purpose behind the statements could only have been to deceive. The court's finding of perjury, though not as specific as it might have been, clearly rested on its determination that Graves lied to the jury with the intent to deceive. See United States v. Dunnigan, 507 U.S. 87 (1993); United States v. Smith, 62 F.3d 641 (4th Cir. 1995); United States v. Castner, 50 F.3d 1267 (4th Cir. 1995). We find that the application of the enhancement was not clear error.

Finally, we reject Graves's argument that the 100:1 sentencing ratio between cocaine base and cocaine powder is unconstitutionally vague. Graves forfeited appellate review of this claim but for plain error by his failure to raise it before the district court. See United States v. Olano, ___ U.S. at ___, 61 U.S.L.W. at 4423-24. Graves's reliance upon United States v. Davis, 864 F. Supp. 1303 (N.D. Ga.

7

1994) for the proposition that cocaine base and cocaine powder are synonymous is foreclosed by our prior decisions finding the existence of a distinction between cocaine base and cocaine powder in the way it is sold and marketed, and because it is more addictive than cocaine powder. See United States v. Bynum, 3 F.3d 769, 774 (4th Cir. 1993), cert. denied, ___ U.S. ___, 62 U.S.L.W. 3552 (U.S. Feb. 22, 1994) (No. 93-7295); United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir. 1990). Accordingly, Graves has failed to establish plain error.

Lightner's and Graves's convictions and sentences are, accordingly, affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED

8