PER CURIAM:
Josiah McManus was charged under the Assimilative Crimes Act (“ACA”), see 18 U.S.C.A. § 13 (West 2000), with speeding to elude arrest while driving on the Blue Ridge Parkway near Asheville. He pleaded guilty and was sentenced to 15 months imprisonment. McManus appeals, challenging the length of his sentence.
“The ACA provides that in the absence of a governing federal statute, a person who commits a state crime on a federal enclave ‘shall be guilty of a like offense and subject to a like punishment.’ ” United States v. Pierce, 75 F.3d 173, 176 (4th Cir.1996) (quoting 18 U.S.C.A. § 13(a)). Accordingly, a defendant prosecuted under the ACA “may be sentenced only in the way and to the extent that the person could have been sentenced in state court. For instance, a term of imprisonment imposed for an assimilated crime may not exceed the maximum term established by state law.” Id. (citations and internal quotation marks omitted).
*856 We agree with McManus that for purposes of this case, the state maximum sentence was the maximum sentence that could have been imposed on him by a state-court judge. Under North Carolina’s structured sentencing scheme, a defendant with McManus’s criminal history could have been sentenced to a maximum of 10 months. See N.C. Gen.Stat. § 15A-1340.17(d) (2005). The government, however, contends that the state statutory maximum for purposes of the ACA is 30 months, not 10 months, because the relevant North Carolina statute permits a 30-month sentence for a defendant in the highest criminal history category. We disagree. Even if Blakely’s[1] Sixth Amendment requirements were satisfied, a North Carolina sentencing court would have no discretion to sentence a defendant with McManus’s criminal history score to anything above the aggravated maximum sentence of 10 months. See N.C. GemStat. § 15A-1340.13(e) (2005) (“The court may deviate from the presumptive range of minimum sentences of imprisonment specified for a class of offense and prior record level if it finds ... that aggravating or mitigating circumstances support such a deviation. The amount of the deviation is in the court’s discretion, subject to the limits specified in the class of offense and prior record level for mitigated and aggravated punishment. ” (emphasis added)). Because 10 months is the maximum that McManus could have received under state law, we believe 10 months is the maximum state sentence for purposes of sentencing under the ACA. See Pierce, 75 F.3d at 176 (explaining that a defendant prosecuted under the ACA “may be sentenced only in the way and to the extent that the person could have been sentenced in state court” (emphasis added and internal quotation marks omitted)).
We recognize, of course, that federal courts are not required to assimilate “every incident of a state’s sentencing policy,” United States v. Harris, 27 F.3d 111, 115 (4th Cir.1994), and that state sentencing provisions that conflict with federal sentencing policy will not be assimilated, see Pierce, 75 F.3d at 176. Contrary to the government’s suggestion, however, we cannot conclude that North Carolina’s method for calculating criminal history points conflicts with federal sentencing policy simply because McManus would have received a higher criminal history score under the federal guidelines. Both the federal and state schemes recognize that repeat offenders should receive more severe sentences; that the federal and state schemes calculate the scores differently does not mean that the state scheme conflicts with a federal sentencing policy.
Under North Carolina’s sentencing scheme, the maximum sentence in any given case is dependent upon the existence of any aggravating or mitigating factors and the defendant’s criminal history score. If we are not required to assimilate those portions of the North Carolina scheme, then federal courts could impose sentences that could not be imposed in state court. The ACA does not require a federal sentence to be identical to the sentence that would be imposed under state law, but it must be similar. See Pierce, 75 F.3d at 176. We cannot conclude that a sentence that would be illegal under state law is nonetheless a “like sentence” within the meaning of the ACA. See United States v. Young, 916 F.2d 147, 150 (4th Cir.1990) (explaining that “the ‘like punishment’ requirement of the [ACA] mandates that federal court sentences for assimilated crimes must fall within the minimum and maximum terms established by state law, and that within this range of discretion federal judges should apply the Sentencing *857 Guidelines to the extent possible” (emphasis added)); United States v. Garcia, 893 F.2d 250, 254 (10th Cir.1989) (“[T]he [ACA] requires courts to impose sentences for assimilative crimes that fall within the maximum and minimum terms established by state law. However, within the range of discretion permitted to a state judge, a federal judge should apply the federal sentencing guidelines to the extent possible.” (emphasis added)).
Accordingly, we conclude that the maximum sentence under North Carolina law was 10 months. Because the sentence imposed by the district court exceeded the maximum sentence available under state law, we reverse McManus’s sentence and remand for re-sentencing consistent with this opinion.[2]

REVERSED AND REMANDED.

. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

. We reject the government’s contention that this issue was not raised below and must therefore be reviewed for plain error only. The PSR calculated McManus’s sentence under the North Carolina Structured Sentencing Act, counsel for McManus argued for a sentence within the presumptive range of the Structured Sentencing Act, and counsel for the government argued that the court was bound only by the maximum sentence (30 months) that could be imposed on any defendant under North Carolina law. We believe this is sufficient to preserve the issue of what the maximum sentence is under North Carolina law and thus the maximum to which McManus could be sentenced under the ACA.